# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

**SAMUEL DELANEY**            :        **DOCKET NO. 12-cv-3014**
    **D.O.C. # 513221**

**VERSUS**                   :        **JUDGE MINALDI**

**N. BURL CAIN**             :        **MAGISTRATE JUDGE KAY**

## REPORT AND RECOMMENDATION

Before the court is an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed pro se by Samuel Delaney ("petitioner") [doc. 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections and is currently incarcerated at the Louisiana State Penitentiary at Angola ("Angola"). N. Burl Cain ("respondent"), warden of Angola, has responded [doc. 7].

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons IT IS RECOMMEDED that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

## I.
### BACKGROUND

#### A.  Conviction  and Direct Appeal

The petitioner lived with his girlfriend, T.F., and her youngest daughter, K.M., at his home in Allen Parish, Louisiana. Doc. 1, att. 3, p. 5. T.F. had another daughter, H.F., who lived with her

father and stepmother in a neighboring parish but visited on weekends. *Id.* H.F. was born in 1994 and K.M. in 1996. Doc. 8, p. 34.

In February 2004, H.F. told her stepmother that the petitioner was making the girls watch pornographic movies, fondling them, and forcing them to perform oral sex on him. Doc. 8, p. 185. At an informal meeting soon after with T.F. and other family members, K.M. confirmed these allegations but then recanted a short time later and moved back into the house with her mother and the petitioner. *Id.* H.F. remained at her father's house. *Id.* On July 21, 2004, K.M. reported the abuse to her own father and stepmother who brought her to the emergency room for an examination. *Id.* at 267. Both girls were interviewed individually at a Children's Advocacy Center between July 28 and August 5, 2004, where they repeated the same allegations. *Id.* at 182–84 (interview summary for H.F.), 267–69 (interview summary for K.M.). The petitioner was indicted by grand jury in Allen Parish on one count per victim of aggravated rape, molestation of a juvenile, and lewd behavior with a juvenile (H.F. and K.M., identified by their respective birthdates), with each count alleging that the offense had been committed "on multiple occasions" between August 2003 and February 2004. Doc. 8, p. 34. He was arrested on August 31, 2004. *Id.* at 246.

At trial the prosecution elicited testimony from both victims on the contents of a tape the petitioner had made them watch with him. *Id.* at 1242–48, 1366. The videotape, stipulated by the parties as "depict[ing] . . . men and women completely nude and sometimes partially nude engaged in sexual acts," was admitted over the defense's objection. *Id.* at 1518.

The prosecution offered testimony from Jolynn Doland, a Licensed Clinical Social Worker. *Id.* at 1217. Doland is the former director of a children's advocacy center in Lake Charles, Louisiana, and had conducted the forensic interview on H.F. in 2004. *Id.* at 1217–20. She testified on her experience of forensic interviewing, including the types of questions that she asked and

why and on her recollection of H.F.'s interview. *Id.* at 1219–24. She did not offer an opinion as to H.F.'s truthfulness but did note H.F.'s level of spontaneity and tendency to offer corrections as positive indicators of credibility.[1] *Id.* at 1219–20, 1222–23. Videotaped portions of H.F.'s interview were later introduced at trial. Doc. 1, att. 3, pp. 30–31.

Another witness for the prosecution, psychologist Dr. John Simoneaux, testified based on his interviews of K.M. and H.F. and his general professional experience of child sex abuse victims. Doc. 8, pp. 1442–66. He also based his testimony on thousands of similar diagnostic interviews with victims of child sex abuse, describing characteristics such as delays in disclosure and a tendency to recant. *Id.* During direct examination the prosecutor asked Simoneaux if he had an expert opinion "as to [K.M.'s] psychological evaluation." *Id.* at 1459. Simoneaux began to answer, ". . . if you're asking me if I'm absolutely certain if [K.M.] is telling the truth, I'm not . . ." *Id.* The petitioner's attorney then objected to Simoneaux "testifying as to the truthfulness," which the court sustained. *Id.* Simoneaux continued to testify without objection on the interviews and several factors supporting his belief in K.M. and H.F.'s credibility. *Id.* at 1454–1460. The prosecution also offered testimony from Dr. Tom LaHaye, an obstetrician-gynecologist who had examined K.M. *Id.* at 1305, 1307. LaHaye testified that he found no evidence of sexual abuse when he examined K.M.'s pelvic region, but also said that fondling or digital penetration could occur without leaving behind physical evidence. *Id.* at 1307–10.

In his closing argument, the prosecutor responded to numerous challenges to the victims' credibility by asking the jury to see the events that had unfolded since disclosure through the eyes of K.M. and H.F. *Id.* at 1577–78, 1581–82. To this end he referenced "the punishment they [had]

---

[1] The petitioner's attorney interrupted when it appeared that Doland was about to give an opinion on overall credibility. Doc. 8, p. 1220. After a discussion at the bench outside of the hearing of the jury, the prosecutor continued his questioning, limiting it to comparisons between H.F. and other interview subjects on specific fronts such as spontaneity. *Id.* at 1220–22.

suffered" as a result of disclosing that they had been sexually abused, including the embarrassment of testifying. *Id.* at 1577–78, 1581–82.

On August 25, 2006, the petitioner was convicted of two counts of aggravated rape, two counts of indecent behavior of a juvenile, and two counts of molestation of a juvenile by a jury sitting in the 33rd Judicial District, Allen Parish, Louisiana. Doc. 8, pp. 770–71. He then filed a Motion for a Post-Judgment Verdict of Acquittal on the grounds that there was insufficient evidence to support the conviction. *Id.* at 827. The court denied this motion. *Id.* at 843. He was then sentenced on December 1, 2006, to two sentences of life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence for the aggravated rapes, two sentences of ten years at hard labor for the convictions of molestation, and two sentences of seven years at hard labor for the convictions of lewd behavior, all to run concurrently with each other. *Id.* at 846.

He filed a timely appeal to the Louisiana Third Circuit Court of Appeals, citing several assignments of error by the trial court:

1. Refusing to allow the defense to present evidence of two instances of prior sexual assault by third parties on one of the victims in the case.
2. Denying the motion for mistrial and failing to give an admonition based on a witness's reference to a purportedly unrelated offense.
3. Refusing to quash the indictment for duplicity.
4. Allowing Simoneaux to testify on the credibility of the victims.
5. Allowing introduction of prior consistent statements by the victims in the form of videotaped interviews.
6. Denying the petitioner's motion for post-verdict judgment of acquittal.

Doc. 1, att. 3, pp. 4–5.  The Third Circuit affirmed the convictions of aggravated rape and molestation but reversed those for indecent behavior, finding that the state had not established the element of lewd and lascivious behavior necessary for the offense. *Id.* at 31–32. It also stated that it found no merit to first, second, and sixth assignments of error. *Id.* at 17–32. Finally, it dismissed the fourth and fifth claims on procedural grounds, based on the petitioner's failure to object at trial

pursuant to the Louisiana Code of Criminal Procedure.[2] *Id.* at 30 (citing LA. CODE CRIM. P. art. 841). It also rendered the third claim moot based on its reversal of the indecent behavior charges. Yet the finding of mootness ignored the fact that the second arm of the petitioner's duplicity claim also spoke to the charging of multiple occasions of the same offense within **each** count of the indictment, not just the indecent behavior charges. *Id.* at 27. The petitioner then sought review from the Louisiana Supreme Court, which denied his application on September 25, 2009. *Id.* at 33.

### B.  State Collateral Review

The petitioner next sought collateral review through the State of Louisiana by filing an application for post-conviction relief on December 1, 2010. Doc. 8, p. 1715. In the application he made the following claims:

1.  The evidence was insufficient to support convictions of aggravated rape.
2.  The petitioner was denied his rights to due process and a fair trial by the trial court's errors in:
    a.  allowing Doland to give expert opinions without making a determination as to her qualifications.
    b.  allowing the videotape seized from the residence to be entered into evidence.
3.  The petitioner was denied his right to due process, equal protection, and a fair trial by prosecutorial errors relating to sympathy-seeking comments made during closing arguments.
4.  The indictment's failure to name victims meant that the trial court lacked subject matter jurisdiction.
5.  The petitioner received ineffective assistance of counsel at trial because of his attorney's failure to:
    a.  voir dire and object to the qualifications/opinion testimony of Doland.
    b.  object to sympathy-seeking and bolstering comments of the prosecutor during closing argument.

Doc. 1, att. 3, pp. 49–79.  This application received an evidentiary hearing and was subsequently denied by the 33rd Judicial District on July 22, 2011. Doc. 8, pp. 1905–09. The Third Circuit

---

[2] Holding, in the case of Simoneaux's testimony, that the petitioner's objection was sustained to the only part of the testimony to which he objected. Doc. 1, att. 3, p. 30.

affirmed the trial court's denial in part and declined to consider the claims in part on June 26, 2012.[3] Doc. 1, att. 4, p. 25. The petitioner then sought review of the same five claims at the Louisiana Supreme Court, which denied his application for supervisory writ on November 16, 2012. *Id.* at 62; Doc. 8, p. 1923.

### C.  Habeas Application

The petitioner filed the instant application seeking relief under 28 U.S.C. § 2254 with this court on December 3, 2012. Doc. 1. In it, the petitioner renews the last four claims from his direct appeal and all claims from his state application for post-conviction relief. Namely, he asserts that:

1. The trial court erred in refusing to quash the indictment for duplicity.
2. The trial court erred in Simoneaux to testify on the credibility of the victims.
3. The trial court erred in allowing the introduction of prior consistent statements by the victims in the form of videotaped interviews.
4. The trial court erred in denying the petitioner's motion for post-verdict judgment of acquittal.
5. The evidence was insufficient to support convictions of aggravated rape.
6. The petitioner was denied his rights to due process and a fair trial by the trial court's errors in:
    a. allowing Doland to give expert opinions without making a *Daubert* determination as to her qualifications.
    b. allowing the videotape seized from the residence to be entered into evidence.
7. The petitioner was denied his right to due process, equal protection, and a fair trial by prosecutorial errors relating to sympathy-seeking comments made during closing arguments.
8. The indictment's failure to name victims meant that the trial court lacked subject matter jurisdiction.
9. The petitioner received ineffective assistance of counsel at trial because of his attorney's failure to:
    a. voir dire and object to the qualifications/opinion testimony of Doland.
    b. object to sympathy-seeking and bolstering comments of the prosecutor during closing argument.

---

[3] Stating "Those claims that were beyond this court's scope of review, waived, or repetitive were not considered. *See* Uniform Rules—Courts of Appeal, Rules 1–3 and 2–12.4; La. Code Crim. P. arts. 535 & 930.4." However, the Third Circuit gave no indication as to which claims those were and no grounds for narrowing our understanding of the basis. Doc. 1, att. 4, p. 25.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

#### A. *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This limitation period generally runs from the date that the conviction becomes final. *See* 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Mayle v. Felix*, 545 U.S. 644, 644 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B. *Procedural Default and Exhaustion of State Court Remedies*

Before we proceed to a consideration of the merits of the issues raised in the petition, we must also consider the doctrines of procedural default and exhaustion of state court remedies.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g., Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988).

Each claim must also be presented to the state's highest court, even when review by that court is discretionary. *Castille v. Peoples*, 109 S.Ct. 1056 (1989). In Louisiana, the highest court is the Louisiana Supreme Court. *See* LSA–Const. Art. 5, § 5(a) ("The supreme court has general supervisory jurisdiction over all other courts . . . .")

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). Exhaustion requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims. *Picard v. Connor*, 404 U.S. 270, 276 (1971).

### 2. *Procedural Default*

When a prisoner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in a forfeiture of a prisoner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter but rather is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. *General Principles*

Federal courts of the United States have jurisdiction over writs of habeas corpus on behalf of a person in state custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

When a state district court adjudicates a petitioner's claim on the merits, this court reviews the state court adjudication under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456, 471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 543 U.S. 447, 452-53 (2005), quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (internal quotations omitted). In order for a state court's application of federal law to be unreasonable, the application must be more than simply erroneous but rather so incorrect as to be objectively unreasonable. *Dilosa v. Cain*, 279 F.2d 259, 262 (5th Cir. 2002).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient

for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

The deferential standards of review elucidated above are applicable on habeas review even when the state court did not provide reasons for its decision, so long as the state court adjudicated the claim on the merits.  *Harrington*, 131 S. Ct. at 784, 785.  In the absence of reasons or a written opinion, "a habeas court must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior [Supreme Court] decision . . . ." *Id.* at 786.

### III.
#### ANALYSIS

As a preliminary matter we review the petitioner's application for timeliness, procedural default, and exhaustion of state court remedies. If we find that the claim is procedurally viable, we then look to its merits under the general standards set forth in Section II.C.

#### A. *Timeliness*

Here we note that the petitioner's conviction became final 90 days after the judgment of the Louisiana Supreme Court, when his time for seeking review by the U.S. Supreme Court expired. *See* Sup. Ct. R. 13. Therefore the one year limit for filing his § 2254 petition began running on December 24, 2009. It was suspended by his application for post-conviction relief on December

1, 2010, after 342 days. The clock began running again when the Louisiana Supreme Court denied review of this application on November 16, 2012, and ran for another 17 days until the filing of the instant application. Therefore a total of 359 days were counted towards the one-year limit, meaning that the instant application is timely under § 2244(d).

### B.  Exhaustion of State Court Remedies and Procedural Default

Finding that the application is timely, we next apply the doctrines of exhaustion of state court remedies and procedural default in order to determine whether we can proceed to the merits of the claim.

#### 1.  Exhaustion of state court remedies

The petitioner renews four claims from his direct appeal, all of which were properly presented to the available state courts. He also renews all claims from his state application for post-conviction relief, which were likewise presented to every level of the state court. The petitioner has been consistent in his use of factual allegations and legal theories for all claims. Therefore we find that the petitioner has exhausted his state court remedies for all claims in the instant petition.

#### 2.  Procedural default

Applying the standards described above, we now consider whether grounds for procedural default exist. Here the Louisiana Supreme Court denied review for both the direct appeal and the application for post-conviction relief, so we look to the judgments of the Louisiana Third Circuit Court of Appeals.

On the petitioner's direct appeal, the Third Circuit ruled on the merits of some of the claims but dismissed three claims on procedural grounds:  the claims related to alleged bolstering in the video testimony and Simoneaux's testimony based on failure to object at trial, and the claim of duplicity in the indictment as moot because it had already reversed the charge of indecent behavior

on other grounds. Because the dismissal of the first two claims was properly based on a state rule of criminal procedure, we find that they were procedurally defaulted. *See* LA. CODE CRIM. P. art. 841. Therefore we will not consider these claims. We now consider whether the same applies for the claim relating to the indictment.

Ordinarily the doctrine of mootness prevents a court from considering the merits of a claim. *See, e.g.*, *Goldin v. Bartholow*, 166 F.3d 710, 714–15 (1999). However, when a procedural bar is created by the court's own error, the plaintiff may have cause to be excused from the procedural default. *E.g.*, *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007); *Johnson v. Champion*, 288 F.3d 1215, 1228 (10th Cir. 2002); *Alexander v. Dugger*, 841 F.2d 371, 374 (11th Cir. 1988). Here the finding of mootness was based on an incorrect reading of the petitioner's claim, which also alleged duplicity in other counts of the indictment where the Third Circuit had affirmed the convictions. Thus the claim as a whole was not actually moot. On this basis, we find that the state's failure to appreciate the full extent of the petitioner's claim is sufficient cause to excuse the default as it relates to the charges for which the Third Circuit affirmed the petitioner's conviction. Therefore we will consider the claim of duplicity in the indictment on the merits.

As for the application for post-conviction relief, the 33rd Judicial considered all claims on the merits. Though the Louisiana Third Circuit indicated that it might have procedural grounds for not considering one or more of the claims, we have no basis for determining which claims or what grounds those were. At any rate, all claims were presented to the Louisiana Supreme Court, which cited no procedural grounds in its discretionary denials of review. Therefore, we find no grounds for applying procedural default to any of the claims from the state application for post-conviction relief presented here.

Accordingly, we will consider the following claims on the merits:

1. The trial court erred in refusing to quash the indictment for duplicity.
2. The trial court erred in denying the petitioner's motion for post-verdict judgment of acquittal and whether the evidence was insufficient to support convictions of aggravated rape.
3. The petitioner was denied his rights to due process and a fair trial by the trial court's errors in:
   a. allowing a social worker (Doland) to give expert opinions without making a *Daubert* determination as to her qualifications.
   b. allowing the videotape seized from the residence to be entered into evidence.
4. The petitioner was denied his right to due process, equal protection, and a fair trial by prosecutorial errors relating to sympathy-seeking comments made during closing arguments.
5. The indictment's failure to name victims meant that the trial court lacked subject matter jurisdiction.
6. The petitioner received ineffective assistance of counsel at trial because of his attorney's failure to:
   a. voir dire and object to the qualifications/opinion testimony of Doland.
   b. object to sympathy-seeking and bolstering comments of the prosecutor during closing argument.

## C. *Substantive Analysis*

Having determined the claims that can be heard by this court under § 2254, we will now consider each claim by first ascertaining the standard of review to be applied and then applying that standard to the merits of the argument.

### 1. *Whether the trial court erred in refusing to quash the indictment*

The petitioner argues that the indictment is duplicitous and thereby violates his right to due process. U.S. CONST. Amend. V and XIV. The portion of his claim that was not rendered moot by the Third Circuit's reversal of the indecent behavior charges alleges that the indictment was duplicitous because it charged more than one act in each count.

An indictment that charges multiple acts in a single count may reasonably be viewed as duplicitous. *United States v. Olmeda*, 461 F.3d 271, 281 (2d Cir. 2006). Though courts are cautioned against duplicitous indictments in order to give defendants adequate notices of the

charges, they are also cautioned against turning a single transaction into multiple charges. *Compare United States v. Cooper*, 966 F.2d 936, 939 n. 3 (1992) *with United States v. Robin*, 693 F.2d 376, 379 (5th Cir. 1982). Accordingly, a duplicitous indictment is only invalid if it prejudices the defendant. *United States v. Salinas*, 654 F.2d 319, 326 (5th Cir. 1981), *overruled on other grounds by United States v. Adamson*, 700 F.2d 953, 966 n. 18 (1983).

Here the petitioner alleges that he was prejudiced because the allowance of multiple acts over a span of months within each count caused him to face "an unspecified number of acts over a long period of time" and a trial that consisted of "testimony of a dizzying array of allegations . . . for which he received minimal notice." Doc. 1, att. 2, p. 16. The respondent contends that the victims could not specify dates due to their young ages at the time of abuse and the great length of time for which the abuse persisted.

Other courts have recognized the problem of time specificity in charging child sex abuse crimes.  The Supreme Court of California held that an absence of specificity as to dates in resident child sex abuse cases does not generally prejudice the defendant's ability to present a defense. *People v. Jones*, 792 P.2d 643, 657 (Cal. 1990). A child's account of sexual abuse may also include enough detail on other accounts to provide sufficient  Instead, the trial usually centers on the basic credibility of the victim rather than alibi or identity of the defendant.[4] *Id.*

Because the allegations here centered around multiple, regular counts of abuse perpetrated by someone known well to both victims, who was a resident of the home where one victim lived and another regularly spent the weekend, we find it supremely unlikely that he could raise an effective defense based on mistaken identity or the fact that he was absent at a specific time when

---

[4] *See also Valentine v. Konteh*, 395 F.3d 626, 632 (6th Cir. 2005) ("This Court and numerous others have found that fairly large time windows in the context of child abuse prosecutions are not in conflict with constitutional notice requirements.")

one of the victims alleges abuse occurred. Additionally, the victims' testimonies provided dozens of other details relating to the abuse. The petitioner still had ample ground to attack the victims' credibility using the consistency of their accounts with each other and between various disclosures to relatives, child welfare professionals, and at trial.

Accordingly we find that the defendant was not prejudiced in his ability to mount a defense by the charging of multiple acts within the same count. Accordingly there are no grounds for quashing the indictment and this claim offers no basis for federal habeas relief.

> ### 2. *Whether the trial court erred in denying the petitioner's motion for a post-judgment verdict of acquittal and whether there was sufficient evidence to support a conviction of aggravated rape*

The petitioner next asserts that his right to due process was violated when the trial court denied his Motion for a Post-Judgment Verdict of Acquittal. Doc. 8, pp. 827, 843; U.S. CONST. Amend. V and XIV. From his state application for post-conviction relief, he also contends that this right was violated by the lack of sufficient evidence to support a conviction of aggravated rape. Because the standards involved are the same and the petitioner does not brief the two issues separately, we discuss them together here.

The Supreme Court held in *Jackson v. Virginia* that a person's right to due process is violated when he is convicted of a crime without every element of the offense having been proven beyond a reasonable doubt. 99 S.Ct. 2781, 2787 (1979). Under *Jackson*, a federal court reviewing the sufficiency of evidence must look at the record of historical facts in the light most favorable to the prosecution. 99 S.Ct. at 2793. Such an evaluation is a mixed question of law and fact.[5] *See Ornelas v. United States*, 116 S.Ct. 1657, 1662 (1996). Therefore we review these claims in order

---

[5] "The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact: The historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the relevant statutory or constitutional standard. . . ." *Ornelas*, 116 S.Ct. at 1662 (internal quotations and alterations omitted).

to determine if it is contrary to clearly established federal law or involved an unreasonable application of that law.

The statutes under which the petitioner was convicted are as follows:

| Offense | Elements |
|---|---|
| Aggravated Rape La. R.S. 14:42 | A. Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances: . . . (4) When the victim is under the age of thirteen years. |
| Molestation of a Juvenile La. R.S. 14:81.2 | A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person . . . of any child under the age of seventeen . . . with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. |
| Indecent Behavior with Juveniles La. R.S. 14:81 | A. Indecent behavior with juveniles is the commission of any of the following acts with the intention of arousing or gratifying the sexual desires of either person: (1) Any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons. |

The petitioner contends that there was insufficient evidence to support any of the charges because the sole issue at trial was the credibility of the victims and their testimony was not sufficiently corroborated.

On direct appeal, the Third Circuit agreed with respect to the counts of indecent behavior with a juvenile, finding that merely watching pornography with the victims was insufficient and that the prosecution had not established the element of lewd and lascivious behavior during that episode because it failed to show an overt act of the petitioner; however, the Third Circuit found

-18-

that the testimony from the victims sufficiently credible, based on the level of detail provided, their consistency with each other, and the location of lubricants used by the petitioner in places where the victims said they would be located, to support the convictions of aggravated rape and molestation.

The petitioner attacks the victims' credibility with several points of doubt from the trial transcript, specifically referencing the lack of physical evidence of abuse, K.M.'s initial recantation, and minor inconsistencies or delayed disclosures within the testimony of both victims. We consider all of these points in the context of the other evidence offered at trial, including the testimony of Simoneaux and LaHaye. Simoneaux spoke of the characteristics of victims of child sex abuse, including their tendency to delay and recant when it came to making disclosures. He also remarked on several points of credibility based on his interviews of both K.M. and H.F.

Meanwhile, LaHaye stated that the conduct for which the pelvic exam was supposed to yield evidence — namely, the fondling and digital penetration — could have occurred without leaving any physical signs. The petitioner does not claim that there should have been physical evidence to support the claims of oral penetration, which formed the basis of the aggravated rape charges.

On the strength of the prosecution's witnesses and, under our instructions to read the record in the light most favorable to the prosecution, we find that the doubts raised by the lack of physical evidence and the alleged inconsistencies are sufficiently overcome by the overall credibility of the victims and the explanations offered by Simoneaux and LaHaye. Therefore there was sufficient evidence to support the convictions for aggravated rape and molestation. Accordingly, these claims offer no basis for federal habeas relief.

### 3.   Whether the petitioner's right to due process was violated by trial court errors

The petitioner next claims that his right to due process was violated by two alleged errors of the trial court: a) allowing Doland to give an expert opinion and b) allowing a videotape seized from the residence to be entered into evidence. *See* U.S. CONST. Amend. V and XIV. Given that no questions of fact are at issue here, we review this claim for contrariness to or unreasonable application of federal law.

### a.   Whether the trial court erred in allowing Doland to give an expert opinion without making a Daubert determination of her qualifications

The petitioner contends that the trial court erred by allowing Doland to offer opinions without subjecting her to the expert qualification requirements under *Daubert v. Merrell Dow Pharm., Inc.*, 113 S.Ct. 2786.

The 33rd Judicial District rejected this claim in the petitioner's application for post-conviction relief, citing no law and instead stating that Doland's testimony was merely foundation for the introduction of H.F.'s videotaped interview. We disagree to the extent that Doland did offer opinion in the forms of indicators of credibility from H.F.'s interview. We therefore look to whether her opinion was offered as an expert or lay witness in order to determine what sort of qualifications it ought to have met.

The Federal Rules of Evidence allow that an expert witness can offer opinion testimony if the expert's specialized knowledge is helpful to the trier of fact in determining a fact in issue, there is a sufficient basis of support for the testimony, "the testimony is the product of reliable principles and methods," and the expert has applied these to the facts of the case to reach her opinion. FED. R. EVID. 702. Under *Daubert*, the trial court must use these standards to make a preemptory determination on the admissibility of expert testimony before it can be heard by the trier of fact. 113 S.Ct. at 2796–97. Lay opinions are not implicated anywhere within *Daubert*. A lay witness

may offer opinions that are rationally based on her own perception and relevant to her testimony or a fact in issue. FED. R. EVID. 701.

The general distinction between a lay witness and an expert witness is that "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (internal quotations and alterations omitted).  The Fifth Circuit has not directly addressed whether witnesses like Doland should be treated as experts; however, the Eighth Circuit recently held that forensic interviewers offering opinions on their subjects should be viewed as lay rather than expert opinion testimony. *United States v. Smith*, 591 F.3d 974, 982–83 (8th Cir. 2010). The Eighth Circuit reasoned that such testimony was based on the interviewer's personal knowledge of the subject and personal experience of previous interviews, and that it did not involve reference to "scientific, technical, or other specialized knowledge." *Id.* at 983.

We are persuaded by the Eighth Circuit's view. Doland referred to specific indicators of credibility based on her experience as a forensic interviewer, such as the fact that a subject who responds to non-leading questions or offers corrections of the interviewer's statement of facts is more reliable. However, these indicators are unlikely to be beyond the ken of the jury, much less the result of "a process of reasoning which can be mastered only by specialists in the field." *Yanez Sosa*, 513 U.S. at 200. Doland's testimony thus fits within the opinions allowed of lay witnesses under FED. R. EVID. 701 and no preemptory determination of credibility was implicated under FED. R. EVID. 702 and *Daubert*. We therefore find that the trial court did not err in determining the admissibility of Doland's testimony.

**b.   Whether the trial court erred in allowing the videotape seized from the residence to be entered into evidence.**

The petitioner contends that the trial court erred in admitting into evidence a videotape seized from the house. He claims the tape was never determined to be pornographic or part of the petitioner's personal property and that it was never determined that the victims watched the tape. Without proper foundation, he alleges, the introduction of the videotape was gravely prejudicial. He cites no law for this claim; however, we note that under both the Federal Rules of Evidence and the Louisiana Code of Evidence, a court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." FED. R. EVID. 403; *see also* LA. CODE OF EVID. art. 403.

In return, the respondent points out that both victims described the contents of the tape in their interviews and being made to watch it by the petitioner. We also note that the parties stipulated a description of the tape that does not seem to refute its categorization as pornography. The location of the tape within the petitioner's home supports his access to it and corroborates the victims' testimony that they were made to watch it there. Therefore, we find that a proper foundation for the tape was laid and that there is no basis for claiming that it was unfairly prejudicial. Accordingly, the trial court did not err in admitting the videotape as evidence.

Because we find no violation of federal law with respect to the admission of Doland's testimony and the videotape, this claim offers no basis for federal habeas relief.

**4.   Whether the petitioner was denied his right to due process by the prosecutor's sympathy-seeking comments at closing argument**

The petitioner next alleges that his right to due process was violated by the prosecutor's sympathy-seeking comments at closing arguments. U.S. CONST. Amend. V and XIV. Because there is no dispute as to the words that were said, which are drawn from the trial transcript, we find

that no questions of fact are at issue and review this claim for contrariness to or unreasonable application of federal law.

Claims of prejudice resulting from remarks made by a prosecutor at trial are analyzed as prosecutorial misconduct. *United States v. Young*, 105 S.Ct. 1038, 1041–42 (1985). Accordingly, a court may review a prosecutor's comments and find them to be inappropriate but will only reverse a conviction if it finds that the remarks were improper and prejudicial. *United States v. Sanchez*, 961 F.2d 1169, 1176 (5th Cir. 1992). This review will take into account the context of the statements, such as any statements by the defense to which the prosecutor is responding. *See Young*, 105 S.Ct. at 1045. The Fifth Circuit has also stated that the prejudicial impact of such remarks is minimal when the information they convey to the jury is obvious. *United States v. De La Rosa*, 911 F.2d 985, 992 (5th Cir. 1990) (discussing a prosecutor's reference to the lost opportunities for mother-child bonding as part of the harm caused by an abduction).

The petitioner does not challenge the statements for bolstering the credibility of the witnesses under this section. However, as this contention is closely related to sympathy-seeking and is made as part of the petitioner's ineffective assistance of counsel claim, we will also handle it here.

A prosecutor is forbidden from asserting a personal belief or opinion in the credibility of the government's witnesses. *Berger v. United States*, 55 S.Ct. 629, 632 (1935); *Young*, 105 S.Ct. at 1048. The rationale is to prevent the prosecutor from "[cloaking] . . . witnesses in the protective mantle of the . . . government." *United States v. Gallardo-Trapero*, 185 F.3d 207, 320 (5th Cir. 1999). However, this does not preclude the prosecutor from "[arguing] fair inferences from the evidence that a witness has no motive to lie." *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008).

Here we begin by noting that the statements at issue are self-evident as they make the obvious suggestion that a child might be embarrassed or intimidated when disclosing sexual abuse and being called as a witness in a trial. Even if these statements are held as inappropriate, their prejudicial impact should thus be viewed as minimal. We also observe that the alleged sympathy-seeking comments were made in the context of rebutting the defense's contention that the victims were lying. They are meant to show not what the victims suffered as a result of the acts committed by the petitioner but instead what they suffered as a result of their willingness to cooperate in his prosecution. Additionally, the prosecutor did not make any personal assertions related to the victims but instead rested his argument on the consequences they have faced as a result of disclosing and their lack of motive to lie. Thus we find that the comments did not constitute impermissible bolstering.

We therefore find that the prosecutor's comments were neither improper nor prejudicial. Accordingly, their utterance did not violate the petitioner's constitutional rights and he cannot use them as grounds for federal habeas relief.

### 5. *Whether the indictment's failure to name the victims meant that the trial court lacked subject matter jurisdiction*

The petitioner next claims that his right to due process was violated by the indictment's failure to name the victims, who were instead identified by their birthdates. U.S. CONST. Amend. V and XIV. Because there is no dispute to this fact, we review it for contrariness to federal law.

There is no federal requirement that indictments name accusers. Instead, defects to a state indictment only warrant federal habeas relief if the charging document is "so defective that the convicting court had no jurisdiction," meaning that "under no circumstances could a valid state conviction result from facts provable thereunder." *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984). In this regard, even greater deference is shown to the state court's indication that the

indictment was sufficient under the law of that state. *Alexander v. McCotter*, 775 F.2d 595, 598–99 (5th Cir. 1985); *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994).

The petitioner cites to the Louisiana Code of Criminal Procedure, which provides in part that:

> When the name of the person injured is substantial and not merely descriptive, such as when the injury is to a person, as in murder, rape, or battery, the indictment shall state the true name of the victim or the name, appellation, or nickname by which he is known. If the name, appellation, or nickname of the victim is not known, it is sufficient to so state and to describe him as far as possible.

LA. C. CR. P. art. 473.  We note that Louisiana courts have upheld Article 473 as requiring that rape victims be named, and that other identifying factors like ages are not sufficient. *E.g.*, *State v. Tillery*, 167 So.3d 15, 19 (La. App. 5th Cir. 2014); *State v. Rieckmann*, 2015 WL 5515017 at *12–*13 (La. App. 1st Cir. Sep. 18, 2015). Therefore, identification of K.M. and H.F. by their birthdates does not comport with Article 473's requirements; however, the fact that the victim is unnamed will only render the indictment invalid, depriving the trial court of subject matter jurisdiction, if the defendant is thereby prejudiced. *Tillery*, 167 So.3d at 19.

Neither the state district nor appellate courts found merit to this claim in the petitioner's application for post-conviction relief, as the 33rd Judicial District remarked that the petitioner was able to match the victims with their dates of birth in discovery. Doc. 1, att. 4, p. 22. We also note that the petitioner does not assert that he was surprised by the identity of the victims. His awareness of the accusations from an early stage, based on the involvement of child protection and K.M.'s initial recantation, is enough to refute such a claim at any rate. We are persuaded that the error in the indictment did not prejudice the petitioner in any way. Therefore this claim offers no basis for federal habeas relief.

### 6.   *Whether the petitioner received ineffective assistance of counsel at trial*

Finally, the petitioner claims that he received ineffective assistance of counsel at trial in violation of his constitutional right to an attorney. U.S. CONST. Amend. VI and XIV. He asserts that his attorney's performance was deficient in two areas: (a) failure to object to the qualifications/opinion testimony of Jolynn Doland and (b) failure to object to allegedly sympathy-seeking comments of prosecutor during closing argument. Finding no dispute as to the facts under either of these issues, we review them for contrariness to federal law.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their reviews of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). The resulting prejudice must also be so great that it creates a substantial likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (internal quotations and alterations omitted). A petitioner must meet both of *Strickland*'s prongs in order to show a basis for federal habeas relief. *Id.*

### *a. Whether the petitioner's attorney provided ineffective assistance of counsel by failing to object to Doland's qualifications and opinion testimony*

The petitioner first asserts that his attorney's failure to *voir dire* Doland on her qualifications in forensic interviewing, object to her qualifications, and object to her testimony.

Having already determined that Doland was a lay witness and not an expert, we do not find any error in the attorney's failure to vet her qualifications.[6] The prosecutor had established sufficient basis for Doland to offer lay witness testimony by virtue of her personal knowledge of forensic interviews and her experience interviewing H.F. The petitioner offers strong objections to the fact that the prosecutor was allowed to elicit Doland's qualifications before the jury, thereby potentially giving her testimony more weight in their eyes; however, he does not offer any grounds on which his attorney might have contradicted these qualifications. Nor do we find any error in the attorney's failure to object to Doland's testimony: he had already requested a sidebar that was successful in limiting the scope of Doland's opinion testimony to matters deemed proper by this court, and we find nothing else to which the petitioner's attorney could have reasonably objected therein. Thus, the petitioner has failed to satisfy the first prong of *Strickland* by showing deficient performance on the part of his attorney in the handling of Jolynn Doland's qualifications and testimony.

### *b. Whether the petitioner's attorney provided ineffective assistance of counsel by failing to object to the prosecutor's remarks during closing argument*

The petitioner also claims that he received ineffective assistance of counsel when his attorney failed to object to the prosecutor's remarks during closing argument.

The petitioner alleges that he was prejudiced by sympathy-seeking comments from the prosecutor. Within this section, he also adds the contention that these comments impermissibly

---

[6] We note no substantive difference between the Federal Rules of Evidence and the Louisiana Code of Evidence in this regard.

bolstered the credibility of the victims. As we discussed above, we do not find merit to either contention. The petitioner has not shown deficient performance by his attorney during closing argument and so the first prong of *Strickland* is not met for this claim either.

Accordingly, we find that ineffective assistance of counsel offers no grounds for federal habeas relief due to the petitioner's failure to establish deficient performance by his attorney.

## III.
### CONCLUSION

For the reasons stated above, the undersigned concludes that the petitioner is not entitled to federal habeas relief.

Accordingly, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir.  1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days

from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

    THUS DONE this 20th day of October, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE